# CHICAGO AND ERIE RAILROAD COMPANY *v.* BIDDINGER, ADMINISTRATOR.

[No. 8,651.   Filed October 26, 1915.   Rehearing denied February 4, 1916.   Transfer denied March 31, 1916.]

1. PLEADING.—*Complaint.*—*Initial Attack on Appeal.*—The sufficiency of a complaint for want of facts can not be assailed for the first time on appeal. p. 424.

2. DEATH.—*Wrongful Death.*—*Action by Administrator.*—An administrator's action for the wrongful death of his decedent is wholly dependent upon the statute, and in the absence of a survivor who has sustained a pecuniary loss by the death of the decedent there is no right of action. p. 425.

3. HUSBAND AND WIFE.—*Wrongful Death of Wife.*—*Action for Benefit of Husband.*—*Statutes.*—Section 285 Burns 1914, Acts 1899 p. 405, authorizing actions for wrongful death to be maintained by the personal representative of the decedent recognizes two classes to whom the damages shall inure, the one consisting of the widow, or widower, as the case may be, and children, if any, and the other consisting of the next of kin, so that an action for the benefit of a husband may be maintained thereunder for the death of the wife, although she left neither children nor next of kin surviving. p. 425.

4. DEATH.—*Wrongful Death.*—*Action by Administrator.*—*Pecuniary Interest of Persons for Whom Action is Maintained.*—*Complaint.*— In an administrator's action for the wrongful death of his decedent, the allegation that there are persons to whom, under the statute, the damages will inure, renders the complaint sufficient in that respect without the allegation that the persons for whose benefit the action is brought have a pecuniary interest in the life of the decedent. p. 426.

5. RAILROADS.—*Crossing Accidents.*—*Complaint.*—*Sufficiency.*—A complaint to recover for the wrongful death of one who was hit by a train at a crossing, alleging that decedent and her husband were traveling in a buggy toward the railroad to pass over the crossing, that the husband was driving, "and while he was so driving and as plaintiff's intestate approached and entered near to said railroad crossing they proceeded carefully and exercised all due care and caution to see or hear any train or engine or locomotive that might be approaching said crossing", was sufficient as against the theory that the statutory duty to sound the whistle and ring the bell applies only as to travelers on public highways actually crossing, or who had crossed, or who were about to cross. p. 427.

6. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*— *Husband and Wife.*—In an administrator's action for the wrong-

ful death of a married woman, who, while riding with her husband, was struck by defendant's train at a highway crossing, it was not necessary for plaintiff to allege or prove that the occupants of the buggy were free from contributory negligence, and even though it may have appeared from the complaint that decedent's husband who was driving, was guilty of negligence, such negligence could not be imputed to decedent. p. 428.

7. PLEADING.—*Demurrer to Complaint.—Facts Admitted.*—Facts well pleaded in a complaint are to be taken as admitted as against a demurrer. p. 430.

8. NEGLIGENCE.—*Complaint.—Contributory Negligence.—Question for Jury.*—Where the facts alleged in the complaint are of such nature and character as to be reasonably subject to more than one inference as to whether the injured party was guilty of contributory negligence, the question is for the jury. p. 430.

9. RAILROADS.—*Crossing Accidents.—Verdict.—Answers to Interrogatories.*—Where the general verdict amounted to a finding that defendant railroad company had violated the statute with respect to the sounding of the whistle and ringing of the bell on the approach of its train to the crossing, as well as an ordinance regulating the speed of trains, and that decedent was not guilty of negligence materially contributing to her death, answers by the jury to interrogatories from which it appeared that the train was running at forty miles per hour, that decedent was well acquainted with the crossing, that the view of the crossing was obstructed at certain distances, etc., were not in irreconcilable conflict with the general verdict. p. 431.

10. APPEAL.—*Review.—Harmless Error.—Instructions.*—While the practice of reading the complaint to the jury instead of stating the issues and theory of the complaint is subject to criticism, such action does not constitute reversible error, and especially where it appears that the court in another instruction told the jury that the complaint is not evidence and that the jury should not be influenced in any manner by the statements therein contained. p. 432.

11. HUSBAND AND WIFE.—*Wrongful Death of Wife.—Damages.—Instructions.*—In an administrator's action for the wrongful death of his decedent, brought for the benefit of decedent's surviving husband, instructions stating that the damages, if any, suffered by the husband were pecuniary, and that the jury might take into consideration the expectancy of life of decedent, her habits of industry, thrift and economy, the nature and extent of services rendered for her husband, that the amount of her personal expenses should be deducted therefrom, and that no damages should be assessed for pain and suffering of decedent, nor for the wounded feelings of the husband, correctly stated the law so far as they went, and were unobjectionable in the absence of any request for instructions embodying features alleged to have been omitted. p. 433.

Chicago, etc., R. Co. *v.* Biddinger—61 Ind. App. 419.

12. NEGLIGENCE.—*Contributory Negligence.*—It is not every act of negligence on the part of an injured person that will defeat recovery, but such only as materially contributes to the injury. p. 433.

13. RAILROADS.—*Crossing Accidents.—Failure to Signal Approach to Crossing.—Negligence.—Instructions.*—An instruction that the failure of defendant railroad company to comply with the statute in reference to sounding the whistle and ringing the bell on approaching a highway crossing would amount to negligence, was not erroneous. p. 434.

14. RAILROADS.—*Crossing Accidents.—Violation of City Ordinance. —Negligence.—Instructions.—Review.*—While it is generally the duty of the court to say as a matter of law that a city ordinance is or is not in force, an instruction that if the jury found that there was an ordinance in force which limited the speed of trains, the violation thereof would be negligence, was not ground for reversal in view of interrogatories and instructions submitted by appellant from which it appeared that the error was invited. p. 434.

15. HUSBAND AND WIFE.—*Wrongful Death of Wife.—Action.— Right of Recovery.—Instructions.*—In an administrator's action for the death of his decedent, brought for the benefit of decedent's surviving husband, the defendant was not entitled to a peremptory instruction in its favor on the theory that while the complaint alleged that the husband was the sole heir of his deceased wife, the evidence showed that she left a father and mother who were heirs at law to one-fourth of the estate over $1,000, since the husband belonged to the first class of persons who under the statute would be entitled to damages, and where there are persons of this class the damages are awarded to them to the exclusion of the other class. p. 435.

16. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Evidence.—Review.*—The objection that decedent and her husband had encased themselves in a top buggy with the top up and side curtains on, so that it was impossible for them to see, except directly in front of them, and then proceeded to drive toward a dangerous crossing without stopping, and only looked at a point about one hundred feet south of the crossing, etc., was not available in view of evidence and answers by the jury to interrogatories showing that decedent and her husband looked and listened as they approached the crossing from a point where they had a view of the track for about three hundred feet, and that if defendant company had obeyed the statutory provisions as to signals and the provisions of an ordinance regulating the speed of trains, decedent and her husband would have had time to have crossed the track in safety after having looked and listened. p. 436.

17. APPEAL.—*Review.—Refusal of Instructions.*—There was no error in the refusal of instructions requested, but not applicable to the case, as well as of one fully covered by instructions given. p. 438.

18. APPEAL.—*Review.*—*Admission of Evidence.*—In an administrator's action for the wrongful death of his decedent, brought for the benefit of decedent's surviving husband, the admission of testimony by the husband as to the extent of his property, though improper, was not ground for review in the absence of any specific objection directing the attention of the trial court to the infirmity in such testimony. p. 439.

19. DEATH.—*Excessive Damages.*—*Review.*—Where decedent was twenty-three years of age, of good health, a bright, active woman, of kindly temperament, economical and industrious in her habits, familiar with and able to perform the duties that fell to her lot as a farmer's wife, a verdict for $3,000 in an administrator's action for the benefit of her husband was not excessive. p. 439.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by Err Biddinger, administrator of the estate of Minnie M. Biddinger, deceased, against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. O. Johnson, Bull & Johnson* and *Harley A. Logan,* for appellant.

*Arthur Metzler,* for appellee.

MORAN, J.—On April 1, 1911, while Err Biddinger, accompanied by his wife, Minnie Biddinger, was attempting to cross appellant's railroad upon the principal street of the city of Rochester, Indiana, the conveyance in which they were riding was struck by appellant's west bound passenger train and the occupants of the conveyance were violently thrown therefrom and Minnie Biddinger was severely injured, from the effects of which she died the following day. Appellee, as administrator of her estate, brought an action against appellant alleging that her death was caused by the negligence of appellant. A trial by a jury resulted in a verdict in favor of appellee in the sum of $3,000. From a judgment on the verdict, appellant has

appealed and seeks a reversal on the grounds: (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) error in overruling a demurrer to each paragraph of complaint; (3) error of the court in overruling appellant's motion for judgment on answers to interrogatories; (4) error in overruling appellant's motion for a new trial; (5) error in overruling appellant's motion in arrest of judgment; and (6) error in overruling motion to modify judgment.

The complaint is in two paragraphs, and the material allegations that are common to both paragraphs are, that on April 1, 1911, appellant was a corporation, organized under the laws of the State of Indiana, and that its line of railroad passed through the city of Rochester, Indiana, in an easterly and westerly direction, crossing the main street of the city at right angles; on the west side of the street south of the crossing were located a large number of frame buildings, and on the east side and south of the crossing were located a number of dwellings, piles of tile, forest trees, an elevator and freight cars, which obstructed the view to the railroad east of the crossing and the approach of trains from that direction. As Err Biddinger and his wife drew near the crossing, they exercised due care and caution to hear the approach of trains; that appellant carelessly and negligently ran its train of cars to the west at a speed of forty miles per hour, and against the conveyance in which Err Biddinger and his wife were riding, and that his wife by reason thereof was violently thrown from the conveyance and greatly injured, so that she died on the following day; the operators of appellant's train failed to sound the whistle or ring the bell attached to the locomotive until within about 150 feet of the crossing, not leaving

sufficient time for the decedent and her husband to escape; if the whistle had been sounded at a point not less than 80 rods nor more than 100 rods from the crossing, and if the bell had been rung not less than 80 rods nor more than 100 rods from the crossing, and continuously until the train of cars had passed the crossing, the accident could have been avoided. It is alleged that the husband of the decedent is the sole heir and next of kin and entitled to any damage that may accrue by reason of the death of his wife. The second paragraph, in addition to the above facts, alleges the violation of an ordinance of the city of Rochester, which limits the speed of locomotives and trains to twenty-five miles per hour, and, at the time of the accident, the locomotive that came in contact with the conveyance in which the decedent and her husband were riding, was propelled at a high and dangerous rate of speed of forty miles per hour. Damages were demanded in the sum of $10,000.

The first assignment of error presents no question for review. The sufficiency of the complaint for want of facts can not be assailed

1.  for the first time in the appellate tribunal, since the passage of the act of March 4, 1911. Acts 1911 p. 415, §344, 348 Burns 1914. *Robinson v. State* (1912), 177 Ind. 263, 97 N. E. 929; *Stiles v. Hasler* (1913), 56 Ind. App. 88, 104 N. E. 878. Appellant urges that the demurrer should have been sustained to each paragraph of the complaint for the reason, that before there can be a recovery under the statute for the death of one caused by the wrongful act of another, the complaint must disclose that some one of the class of persons for whom the action can be maintained under the statute, was dependent, in some way, for support upon the decedent; and that the allegation that

the husband is the sole heir and entitled to any damages that might inure by reason of the wrongful death of the decedent does not bring the complaint within the purview of the statute, authorizing the administrator to maintain an action under §285 Burns 1914, Acts 1899 p. 405. The right of action, if it exists, is wholly dependent upon the statute, being unknown to the common law. And unless there is a survivor, who has sustained a pecuniary loss by the death of Minnie Biddinger, there is no right of action. *Louisville, etc., R. Co.* v. *Goodykoontz* (1889), 119 Ind. 111, 21 N. E. 472, 12 Am. St. 371; *Pittsburgh, etc., R. Co.* v. *Reed* (1909), 44 Ind. App. 635, 88 N. E. 1080; *Duzan* v. *Myers* (1903), 30 Ind. App. 227, 65 N. E. 1046, 96 Am. St. 341; *Wabash R. Co.* v. *Cregan* (1899), 23 Ind. App. 1, 54 N. E. 767. The act of 1881 (Acts 1881 [s. s.] p. 240, §284 R. S. 1881, §285 Burns 1894), which remained the law until amended in 1899 (Acts 1899 p. 405, *supra*), provided, among other things, that when the death of one is caused by the wrongful act of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained the action, had he lived, against the latter for an injury for the same act or omission. The damages must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the decedent. The supreme court of the state of Kansas, in construing a statute embodying language identical with the above, held that the husband was entitled to recover for the wrongful death of his wife (*Atchison, etc., R. Co.* v. *Townsend* (1905), 71 Kan. 524, 81 Pac. 205, 6 Ann. Cas. 191), on the theory that he came within the pro-

visions of the statute providing that the next of
kin was entitled to recover.   This construction was
placed upon the statute by reason of the provisions
therein that the amount recovered should be
distributed in the same manner as personal prop-
erty of the decedent.   While it is well to keep
before us the light furnished in this behalf, yet
the conclusion we have reached as to the sufficiency
of the complaint, as against the objections  urged
in this particular need not be based upon that part
of the statute that gives the husband, as next of
kin, the right to recover according to the construc-
tion placed thereon by the supreme court of the
state of Kansas, for by the amendatory act of
1899, *supra*, which was in force at the time this
action was instituted, and is still the law, the
word, "widower" was added to the clause, so it
reads, "The damages  *  *  * must inure to
the exclusive benefit of the widow, or widower (as
the case may be), and children, if any, or next of
kin," etc.   By the statute two classes of persons
are recognized as beneficiaries.   The first class is
made up of the widow or widower, as the case may
be, and the children, if there be any such persons
surviving.   The second class consists of the next
of kin to the decedent.   *Pittsburgh, etc., R. Co.* v.
*Reed, supra.*

It is admitted by appellant that when the action
is brought by the administrator for the widow or
children, or for both, that the general allega-
4.  tion that the decedent left a widow or
children, as the case may be, who will sustain
damages by reason of his death, that the complaint
is sufficient in this respect; but this, it is urged, is by
reason of the fact that the husband is under legal
obligations to support his wife and children, which
obligation does not apply to the wife.   It has been

held that the law will imply that the widow and minor children of a decedent have sustained a loss by reason of his death. *Korrady* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261, 29 N. E. 1069; *Pittsburgh, etc., R. Co.* v. *Reed, supra.* "The children of a decedent are the next of kin, but they are put in the class with the widow or widower, as the case may be, by the statute, but the phrase 'next of kin', as used in the statute, relates to other than the decedent's children." *Pittsburgh, etc., R. Co.* v. *Reed, supra.* It was said in *Pennsylvania Co.* v. *Coyer* (1904), 163 Ind. 631, 72 N. E. 875, "It has never been held in this State that the complaint must show the fact that the widow, widower, children, or next of kin of the deceased had a pecuniary interest in his life, or the nature or extent of that interest." The complaint under consideration is sufficient against the objections urged in this respect, as it is only necessary to allege that there are such persons to whom, under the statute, the damages recovered may inure. *Salem Bedford Stone Co.* v. *Hobbs* (1894), 11 Ind. App. 27, 38 N. E. 538; *Commercial Club, etc.* v. *Hilliker* (1898), 20 Ind. App. 239, 50 N. E. 578.

It is further insisted that the complaint does not show a liability because the statutory duty imposed by law on railroad companies to sound 5. the whistle and ring the bell applies only as to travelers on public highways actually crossing, or who had crossed, or who were about to cross (*New York, etc., R. Co.* v. *Martin* [1905], 35 Ind. App. 669, 72 N. E. 654), and that the allegations of the complaint do not bring it within the statute. The complaint alleges, "That on said first day of April, 1911, plaintiff's intestate and said Err Biddinger, her husband, were driving north on said Michigan road or main street with a horse

hitched to a buggy, in which they were seated and riding to pass over said crossing, said Err Biddinger driving said horse, and while he was so driving and as plaintiff's intestate approached and entered near to said railroad crossing they proceeded carefully and exercised all due care and caution to see or hear any train or engine or locomotive that might be approaching said crossing." The allegations of the complaint answer appellant's argument in this respect.

It is further insisted that the complaint is bad because it discloses that the decedent and her husband were guilty of contributory negligence. The burden of appellant's argument is that the complaint discloses that the crossing was a dangerous one for the reason that the view to the railroad east of the street was obstructed, and that, while the complaint shows that the occupants of the buggy proceeded carefully, as they approached the crossing, they did not stop; that they should have exercised a higher degree of care and vigilance for their safety than they did. In considering appellant's contention, it is well to keep in mind that contributory negligence is a matter of defence and that it was not necessary for appellee to allege or prove that the occupants of the buggy were free from contributory negligence. §362 Burns 1914, Acts 1899 p. 58; *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005. It will be noticed that the husband of the decedent was driving the horse at and before the time the accident occurred. The legal relation that an occupant in a conveyance bears to the driver when an injury results by the conduct of another to the passenger or guest in the conveyance has received much attention by the courts and text-book writers. The English case of

*Thorogood* v. *Bryan* (1849), 8 C. B. 115, decided in 1849, seems to be the origin of the doctrine that the negligence of the driver should be imputed to the passenger. The doctrine announced in that decision was criticized as being unsound and not followed by Justice Fields in speaking for the court in the case of *Little* v. *Hackett* (1886), 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652, and was finally overruled by the House of Lords in 1888 in the case of *Bernina* (1888), 13 App. Cas. (L. R.) 1. See, also, *Duvall* v. *Atlantic Coast Line R. Co.* (1904), 134 N. C. 331, 46 S. E. 750, 101 Am. St. 830, 65 L. R. A. 722; *Dean* v. *Pennsylvania R. Co.* (1889), 129 Pa. St. 514, 18 Atl. 718, 15 Am. St. 733, 6 L. R. A. 143; *Union Pac. R. Co.* v. *Lapsley* (1892), 51 Fed. 174, 2 C. C. A. 149, 16 L. R. A. 800. In the case of *Duvall* v. *Atlantic Coast Line R. Co.*, *supra*, the negligence of the father, who was driving a horse, was not imputed to his daughter, who was seated in the conveyance with him at the time of the accident. And in the case of *Union Pac. R. Co.* v. *Lapsley*, *supra*, Sanborn, J., held that the negligence of the brother, who was driving, could not be imputed to his sister. While the courts are not entirely in accord as to the doctrine of imputed negligence, the weight of authority is that the occupant of the conveyance or traveler, who does not act in privity with the driver can not be charged with his negligence. "It is only where the driver is negligent, and is subject to the control of the passenger, that the negligence of the former will be attributed to the latter." *Board, etc.* v. *Mutchler* (1894), 137 Ind. 140, 36 N. E. 534. See, also, *Hoag* v. *New York, etc., R. Co.* (1888), 111 N. Y. 199, 18 N. E. 648; *Louisville, etc., R. Co.* v. *Creek* (1892), 130 Ind. 139, 29 N. E. 481, 14 L. R. A. 733; *Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind.

380, 33 N. E. 280, 34 N. E. 218; *City of Vincennes* v. *Thuis* (1902), 28 Ind. App. 523, 63 N. E. 315.

It was said in *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261, 38 N. E. 476, "the jury were informed that if the intestate was, at the time of the accident, riding in a conveyance driven and controlled by her husband, and if she was killed by the negligence of the appellant, being herself free from fault, her husband's negligence, if he were guilty of any, could not be imputed to her. This, however, is the law."

The marriage relation alone did not, in this case, have the effect of making her responsible for the negligence of her husband providing her husband was guilty of negligence, which we need not decide. Of course, it must not be understood that she was relieved from the duty of exercising ordinary care for her own safety under the circumstances. *Dean* v. *Pennsylvania R. Co., supra; New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, 76 N. E. 804; *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 49 N. E. 857; *Lake Shore, etc., R. Co.* v. *Boyts* (1897), 16 Ind. App. 640, 45 N. E. 812. All the facts well pleaded, relating to the conduct of the husband and the decedent as they approached the crossing at the time of the accident must be taken as admitted as against the demurrer. The facts set up in the complaint are of such a nature and character as to be reasonably subject to more than one inference or conclusion as to whether appellant's decedent exercised due care or was guilty of contributory negligence, hence the ultimate fact as to whether she did exercise due care or was guilty of contributory negligence was properly left to the jury as a question of fact, and not determined as a matter of law by the court. *Greena-*

*waldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Indiana Union Traction Co.* v. *Love, supra.*

The answers to the interrogatories disclose that the locomotive that caused the death of appellee's intestate, was run at the time at a speed of forty miles per hour; the decedent was well acquainted with the crossing; for a considerable distance south of the crossing and on the east side of the street, a view to the railroad was obstructed by an elevator; thirty-one and a half feet south of the crossing, the decedent could have seen the approach of the train for three hundred feet, if no cars were standing on the sidetrack; on the evening of the accident, a freight car occupied the siding; a view of fifty feet could be had to the east after the occupants of the conveyance reached a point within thirteen and a half feet from the south rail of the crossing; south of the elevator for a space of fifteen feet a view to the east for a distance of 500 feet could be had, and the decedent and her husband looked to the east at this point and did not see the train approaching; the horse drawing the conveyance was not stopped within two city blocks of the crossing; at the point where the decedent and her husband looked to the east, they could have seen the train, had it been approaching at the time; an ordinance was in force in the city of Rochester at the time regulating the speed of trains within the corporate limits of the city.

The general verdict, finding as it does that all the material allegations of the complaint have been established, which includes the violation of the statute as to the sounding of the whistle and the ringing of the bell, as well as the violation of an ordinance regulating the rate of speed of trains passing through the corporate limits of the city, is

not brought in conflict with the answers to interrogatories, for there is no material fact established by the answers inconsistent with appellee's right to recover. The general verdict likewise finds that the decedent was not guilty of negligence that materially contributed to her death. Before the answers to interrogatories could overthrow the general verdict, there would have to be such a conflict between the same that they could not be reconciled, which does not exist.

Appellant assigns numerous reasons why a new trial should have been granted. The court's attention is directed, first, to the error relied upon 10. in the giving by the trial court of instructions Nos. 1, 3 and 4 of its own motion, and Nos. 7, 8, 17 and 18 at the request of appellee, and in refusing instructions Nos. 1, 8, 9 and 17 as requested by appellant. Instruction No. 1, as given by the court of its own motion, consisted of the reading of the first paragraph of complaint, and stating the additional averments of the second paragraph not included in the first paragraph. It is contended that there are many unnecessary averments in the first paragraph, as read to the jury, which were not proper in the pleading and upon which no evidence was offered, and which were inflammatory in their nature, intended to prejudice the jury, and thereby enhance the amount of the verdict. The practice of reading the complaint to the jury by the court, instead of stating the issues and the theory of the complaint, or each paragraph as the case might be, is a practice, no doubt, subject to criticism, but is not reversible error. *Angola R., etc., Co.* v. *Butz* (1913), 52 Ind. App. 420, 98 N. E. 818; *Blair-Baker Horse Co.* v. *First Nat. Bank* (1905), 164 Ind. 77, 72 N. E. 1027. And further we are led to believe that no

harm resulted to appellant as the court gave to the jury instruction No. 14, as tendered by appellant, by which the jury was told that the complaint was not evidence in the cause and that the jury should not be influenced in any manner by any of the statements therein contained.

Instructions Nos. 3 and 4 given by the court of its own motion to the jury and No. 18 given at the request of appellee, went to the measure of damages. Considering the same as one charge, the jury was informed that, if any damage was suffered by the husband, it was pecuniary, and in this connection, the jury might take into consideration, the expectancy of life of the decedent, her habits of industry, thrift and economy, the nature and extent of the services rendered for her husband, that the amount of her personal expenses should be deducted therefrom, that no damages should be assessed for pain and suffering of the decedent, nor for the wounded feelings of the husband. The field covered by these instructions upon the measure of damages is practically the same as an instruction which was approved by this court in the case of *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822. The instructions on the measure of damages correctly stated the law so far as the law was attempted to be covered thereby, and as appellant did not tender an instruction including the statement, which it says should have been embodied, it can not now be heard to complain. *Cleveland, etc., R. Co.* v. *Clark, supra.* Instruction No. 7 tendered by the appellee and given by the court, informed the jury that it was not every act of negligence on the part of the person injured that would defeat a recovery, that the negligence must materially contribute

to the accident in order to defeat a recovery. And then the jury was further informed by this instruction and by instruction No. 8, given at the request of appellee, that the failure to comply with the statute in reference to sounding the whistle and ringing the bell on approaching a highway crossing would amount to negligence. No error was committed by the trial court in the giving of either of these instructions. *Nave* v. *Flack* (1883), 90 Ind. 205, 46 Am. Rep. 205; *Matchett* v. *Cincinnati, etc., R. Co.* (1892), 132 Ind. 334, 31 N. E. 792; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 71 N. E. 218, 680; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524, 48 N. E. 352, 49 N. E. 452. Instruction No. 17, given by the court at the request of appellee, among other things states that, if the jury found that there was an ordinance in force in the city of Rochester, Indiana, which limited the speed of steam cars to twenty-five miles per hour, to exceed this limit would be negligence. Ordinarily it is the duty of the court to say as a matter of law as to whether an ordinance is or is not in force, and not leave it to the jury as a question of fact. *Plummer* v. *Indianapolis Union R. Co.* (1914), 56 Ind. App. 615, 104 N. E. 601. The record discloses that appellant tendered to the court interrogatories Nos. 1 to 30, inclusive, and asked the court to submit the same to the jury to be answered, which the court did. Interrogatory No. 30 and the answer thereto are as follows: "Was ordinance No. 11 in force in the city of Rochester, Indiana, on April 1, 1911? Yes." And further appellant tendered to the court instruction No. 19, which it requested the court to give to the jury, and which contained the following: "Unless you find from the evidence

that ordinance No. 11 in the city of Rochester was placed upon its passage after each its first and second reading by the city council; and unless you find further that said city council voted upon the passage of said ordinance," etc.   With this state of the record, the error was invited, and appellant is not now in position to raise objections to instruction No. 17.   Elliott, App. Proc. §627.

By appellant's instruction No. 1, the court was asked to direct the verdict of the jury in its favor. In the main, the same questions presented by the error predicated on the request to give this instruction, are presented by the causes for a new trial, that the verdict of the jury is contrary to law and not supported by the evidence, and as a matter of convenience will be considered together. It is contended that the allegations of the complaint were disproved for the reason that, while the complaint alleges that the husband was the sole heir of the deceased wife, the evidence discloses that she left a father and mother, who were heirs-at-law to one-fourth of the estate over $1,000, and that there can be but one recovery for all the beneficiaries.   §3027 Burns 1914, §2489 R. S. 1881.   In passing on the sufficiency of the complaint to withstand the demurrer, we held that the statute placed the widower in the first class of persons, for whom an action could be brought for the death of another, and it has been held: "If there be persons entitled to damages of this first class, the damages would be awarded for the exclusive benefit of such persons. Persons of the second class would not be entitled to damages, and there could be no recovery for their benefit, if there were persons of the first class entitled."   *Dillier* v. *Cleveland, etc., R. Co.* (1904),

34 Ind. App. 52, 72 N. E. 271.  See, also, *Leyhan*
v. *Leyhan* (1911), 47 Ind. App. 280, 94 N. E. 337.

It is next urged that the decedent and her
husband encased themselves in a top buggy with
the top up and side curtains on, so that it
was impossible for them to see, except
directly in front of them, and then proceeded
to drive towards a dangerous crossing without
stopping and only looked and listened at a point
something like a hundred feet south of the crossing;
that both the decedent and her husband had full
knowledge of the obstruction which prevented a
view of an approaching train from the east.  There
is evidence that the decedent and her husband
started for their home from the city of Rochester
about a quarter after five on the evening of the
accident; the horse drawing the buggy in which
they were riding was gentle, and was brought to a
walk four or five rods south of the crossing and
continued this gait to the place of the accident;
there was a space of about fifteen feet just south
of the elevator where a view of the tracks of the
railroad could be had for some 300 feet; at this
point the decedent and her husband looked to the
east but saw no train approaching; before reach-
ing the sidetrack, the decedent and her husband
leaned forward in the buggy and looked to the
east and west for the approach of trains; the
alarm bell began to ring after they had reached
the sidetrack; at this point the whistle was sounded
for the first time; the horse became frightened
and ran to the west, and as the driver was endeavor-
ing to control the horse and avert the danger, the
buggy was struck by the locomotive, and Mrs.
Biddinger was hurled from the rig and her body
was found some sixty feet west of the crossing
badly bruised and mangled from the effects of

which she died at 1:50 the next morning; the whistle was not sounded from within a half mile of the crossing until the locomotive was within 150 feet thereof, nor was the bell ringing when the train reached the crossing; the train was being run at from 40 to 60 miles per hour; the road ran about due east and west and for some distance south of the crossing where the accident occurred, the view to the approach of trains to the east was obstructed by an elevator standing back from the street about twenty-five feet. On the evening of the accident, a freight car was standing on the sidetrack along the north side of the elevator, the west end of the car being on a line with the west end of the elevator.

Appellant's learned counsel urge with much earnestness that the facts bring the case at bar within the rule of law announced in the case of *Cleveland, etc., R. Co.* v. *Pace* (1913), 179 Ind. 415, 101 N. E. 479. In that case the buggy in which Pace was riding, in addition to having side curtains, had a storm front, and except an isinglass window twelve by eighteen inches in the storm front, Pace's vision was obstructed on all sides; on account of his being inclosed his hearing was greatly impaired, so much so that persons, who attempted to warn him of his danger were unable to attract his attention, and further in the Pace case, the engine whistle, sharply sounded, was heard 300 feet from where the collision took place; the answers to interrogatories disclosed that there was no evidence as to whether Pace looked and listened for the approach of trains. Not so in the case at bar; here the evidence and answers to the interrogatories disclose that the decedent and her husband looked and listened as they proceeded towards the crossing, and at such a place as they had a view of the track for something like 300 feet. It is

true that while the gait of the horse drawing the buggy in which the decedent and her husband were riding was reduced to a walk, the driver did not stop the conveyance. No doubt a condition might arise when the failure of a traveler to stop on approaching a railroad crossing would be such an act of negligence that the court might say as a matter of law that the party failing to do so would be guilty of negligence. The facts do not bring the case at bar within this rule. There is evidence that appellant failed to observe the statutory signals by sounding the whistle and ringing the bell, and also in exceeding the speed limit fixed by the ordinance. Had appellant been obeying the statute and ordinance, as the decedent had a right to believe it would, the absence of the train at the point where she looked would have given herself and husband time to have crossed the track in safety, but at the rate the evidence discloses the train was traveling, the precaution taken was of no avail. Under the evidence and surrounding circumstances, the trial court was clearly right in refusing to give to the jury instuction No. 1, as tendered by appellant, and in submitting the ultimate fact to the jury as to whether the decedent used that degree of care commensurate with the magnitude of the danger encountered. *Cleveland, etc., R. Co.* v. *Starks* (1915), 58 Ind. App. 341, 106 N. E. 646. Instructions Nos. 8 and 17, as requested by appellant, were not applicable to the theory upon which the cause was tried,

17. and the branch of the case sought to be covered by appellant's instruction No. 9, was fully covered by other instructions given, so no error was committed in refusing the instructions tendered by appellant.

It is claimed that the court erred in admitting in

evidence the speed ordinance of the city of Rochester, on the ground that the record failed to show that it had been voted on by the city council and that it was signed by the presiding officer of the council, as provided by §8683 *et seq.* Burns 1914, Acts 1905 p. 219, §81. We have carefully examined the record as to the various steps disclosed thereby as to the passage of the ordinance, and we are convinced that appellant's position is not well taken.

Over the objection of appellant, the husband of decedent was permitted to testify as to the extent of property he owned. This testimony 18. should have been excluded. *Alberti* v. *New York, etc., R. Co.* (1889), 118 N. Y. 77, 23 N. E. 35, 6 L. R. A. 765. The objection, however, made to this testimony was that it was not material and not tending to prove or disprove anything. The trial court's attention should have been directed to the infirmity of this class of testimony by a more specific objection, in order to present the same for review in this court. *Stringer* v. *Frost* (1889), 116 Ind. 477, 19 N. E. 331, 9 Am. St. 875, 2 L. R. A. 614; *Ohio, etc., R. Co.* v. *Walker* (1888), 113 Ind. 196, 15 N. E. 234, 3 Am. St. 638; *Malott* v. *Central Trust Co.* (1907), 168 Ind. 428, 79 N. E. 369, 11 Ann. Cas. 879.

It is urged that the damages assessed by the jury were excessive. The decedent was twenty-three years of age, of good health, a bright, 19. active woman, of kindly temperament, economical and industrious in her habits, familiar with and able to perform the duties that fell to her lot as a farmer's wife. In the light of the evidence a verdict for $3,000 was not excessive. *State* v. *Miller* (1910), 180 Fed. 796.

A number of other questions are presented by

the record, all of which we have carefully considered and find no error prejudicial therein to appellant. Judgment affirmed.

NOTE.—Reported in 109 N. E. 953. As to whether damages for personal injuries resulting in death were excessive or inadequate see L. R. A. 1916 C 820. As to personal contributory negligence of person riding in vehicle driven or controlled by another at railroad crossing, see L. R. A. 1915 E 225. As to duty of railroad employes on approaching crossing as affected by traveler's view of track, see 22 L. R. A. (N. S.) 232. Generally on the question of measure of damages for death of husband or wife, see 17 L. R. A. 71. As to contributory negligence of one spouse as bar to recovery for injuries to other, see Ann. Cas. 1912 A 647. As to measure of damages recoverable by husband for death of wife by wrongful act, see Ann. Cas. 1915 A 700. As to what is excessive verdict in action for death by wrongful act, see 18 Ann. Cas. 1209, Ann. Cas. 1915 C 449. As to the law governing the distribution of damages recovered for death by wrongful act, see Ann. Cas. 1913 D 282.